**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BLACKHAWK COAL SALES, LLC,

Plaintiff,

v. CIVIL ACTION NO. 2:25-cv-00492

XCOAL ENERGY & RESOURCES, et al.,

Defendants.

# MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion for Summary Judgment filed by Plaintiff Blackhawk Coal Sales, LLC ("Plaintiff"). (ECF No. 29.) For the reasons discussed herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## ***I. BACKGROUND***

This matter arises out of a contract dispute. (*See* ECF No. 1.) According to the Complaint, Defendant XCoal Energy & Resources ("XCoal") contracted to buy coal from Plaintiff. (*Id.* at 2, ¶ 3.) However, Defendant XCoal allegedly did not pay for the coal that Plaintiff delivered. (*Id.*, ¶ 4.)

Specifically, the parties entered into six written contracts. (ECF No. 30 at 1; ECF No. 29-1.) As expected, each contract provided that Plaintiff would sell and deliver a certain amount of coal to Defendant XCoal during a specified time period. (ECF No. 30 at 3–8; ECF No. 29-1.) In exchange, Defendant XCoal would purchase and accept said coal and "pay the amount set forth

on each invoice net" either twenty or twenty-one days "from invoice date." (*See* ECF No. 30 at 3–8; ECF No. 29-1.) "However, the aggregate receivables amount covering any/all Agreements between Buyer and Seller shall not exceed $6 million at any given time." (ECF No. 30 at 3–8; ECF No. 29-1.)) Plaintiff alleges that Defendant XCoal has not paid the total amount reflected in the invoices issued under any of the contracts. (*See* ECF No. 30 at 3–8.)

Consequently, Plaintiff initiated this lawsuit against Defendant XCoal.[1] (*See generally id.*) The Complaint asserts four claims. Of relevance, Count I is a claim for breach of contract, (*id.* at 10–11), and Count III asserts a claim for Unjust Enrichment, (*id.* at 12–13.) For each claim, Plaintiff seeks damages in the amount of $12,097,277.69. (*Id.* at 11, 13.)

Plaintiff filed the pending motion for summary judgment on July 6, 2026. (ECF No. 29.) Defendant XCoal filed a response, (ECF No. 31), and Plaintiff filed a reply, (ECF No. 32). As such, this matter is fully briefed and ripe for adjudication.

## *II. LEGAL STANDARD*

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. It states, in pertinent part, that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."

[1] Defendant XCoal LLC, which is purportedly the "general partner of XCoal and generally liable for its debts and obligations," (ECF No. 1 at 2–3, ¶ 9), was also named as a defendant. Defendant Earnie Thrasher ("Thrasher"), who is the "founder, president, [principal owner,] and Chief Executive Officer" of Defendant XCoal and the "organizer and managing member of XCoal LLC," (*id.* at 3, ¶ 10), was also named as a defendant. Count IV of the Complaint attempted to pierce the corporate veil to hold Defendants Thrasher and XCoal LLC liable for the substantive claims against Defendant XCoal. (*Id.* at 13–14; *see also* ECF No. 12 at 6.) However, Count IV was dismissed for failure to state a claim. (*See* ECF No. 26.)

*News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). Summary judgment should not be granted if there are factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 248. "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

When the principles of summary judgment are applied to contract interpretation, "[o]nly an unambiguous writing justifies summary judgment without resort to extrinsic evidence." *W.C. English, Inc. v. Rummel, Klepper & Kahl, LLP*, 934 F.3d 398, 404 (4th Cir. 2019) (quoting *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 247 (4th Cir. 1992)). "If a court properly determines that the contract is unambiguous on the dispositive issues, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *United States v. Turner Construction Co.*, 946 F.3d 201, 206 (4th Cir. 2019) (quoting *World-Wide Rights*, 955 F.2d at 245). On the other hand, where a court deems the contract ambiguous, it may "examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the

interpretative issue, grant summary judgment on that basis." *Washington Metro. Area Transit Auth. v. Potomac Inv. Prop., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (citing *Goodman v. Resol. Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993)). However, if such extrinsic evidence "leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Id.*

## *III. DISCUSSION*

In the pending motion, Plaintiff seeks summary judgment on its breach of contract claim.[2] (ECF Nos. 29, 30.) It is undisputed that Defendant XCoal entered into all of the applicable contracts, received the coal at issue, and has yet to pay the amounts reflected in the invoices for the coal.[3] (*See* ECF No. 31 at 2.) Nevertheless, Defendant XCoal argues that there was no breach. (*See id.*) Defendant XCoal points to the contracts' provision that "the aggregate receivables amount covering any/all Agreements between Buyer and Seller shall not exceed $6 million at any given time." (*See generally id.*) From there, Defendant XCoal contends that "there cannot be a breach of contract for failure to pay for all of the coal because payment is not due for all of the coal at this time under the express language of the contracts at issue."[4] (*Id*. at 2.) Conversely, Plaintiff offers a different interpretation of that contract provision.

Thus, the Court must determine whether the contract provision is ambiguous. *See Turner Construction Co.*, 946 F.3d at 206; *Potomac Inv. Prop., Inc.*, 476 F.3d at 235. If the contract provision is ambiguous, then the Court must determine whether it can resolve the ambiguity by

[2] In the alternative, Plaintiff seeks summary judgment on its unjust enrichment claim. (ECF Nos. 29, 30.)

[3] In fact, none of the material facts are disputed. (*See* ECF No. 31 (acknowledging that Plaintiff "generally and correctly states the factual history of this matter").)

[4] Even if Defendant XCoal's interpretation of this contract provision was correct, it is unclear how there was not a breach, as none of the individual invoices exceeded $6 million. (ECF No. 29-1.) Even the aggregate amount from invoices that were billed within 20-21 days of each other did not exceed $6 million. (*See id.*)

examining extrinsic evidence. *Potomac Inv. Prop., Inc.*, 476 F.3d at 235. If the contract provision is not ambiguous, however, then the Court must determine whether summary judgment is appropriate. *Turner Construction Co.*, 946 F.3d at 206. Each issue is discussed in turn below.

***A. The Contract Provision is Not Ambiguous***

"Under New York law, a contract is unambiguous 'if the contract language has a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of opinion.'"[5] *Burrell v. Sowers*, No. 22-CV-2687, 2023 WL 7320867, at *1 (2d Cir. Nov. 7, 2023) (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016)); *see also In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016) ("[A] contract is not ambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion."). However, "provisions in a contract are not ambiguous merely because the parties interpret them differently." *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 668 N.E.2d 404, 406 (N.Y. 1996). Rather, the "language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Hahn v. JetBlue Airways Corp.*, 837 F. Supp. 3d 500, 504 (E.D.N.Y. 2026) (internal quotations and citations omitted). To that end, words and phrases "must be given their plain meaning," and it is "common practice" for courts "to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." *Mazzola v. Cnty. of Suffolk*, 533 N.Y.S.2d 297, 297 (N.Y. 1988).

[5] It is undisputed that New York law governs the contracts at issue. (*See* ECF No. 30 at 9; ECF No. 29-1 at 16, 26, 36, 46, 56, 66.)

Here, each contract provides the following language:

> "Buyer shall pay the amount set forth on each invoice net Twenty-One (21) days from invoice date. However, the aggregate receivables amount covering any/all Agreements between Buyer and Seller shall not exceed $6 million at any given time. Further, if any payment is due on a holiday, the payment shall be made one (1) day prior to the due date. . . ."

(*See* ECF No. 29-1 at 10 (also providing that other contracts provide for payment within Twenty (20) days from invoice date).) The interpretation of the second sentence is disputed.

Defendant XCoal argues that this sentence means that Plaintiff "is not entitled to receive more than $6 million from XCoal at any given time." (*Id.* at 2.) Conversely, Plaintiff contends that this sentence is a "credit-control term," (ECF No. 30 at 11), which "caps the receivables balance that may be outstanding at any given time," (ECF No. 32 at 2). The fact that the parties interpret this provision differently does not solely render it ambiguous. *Mount Vernon Fire Ins. Co.*, 668 N.E.2d at 406.

It is true that, at first blush, both interpretations may seem reasonable. To start, the sentence is neutrally written. It is neither clear (a) which party's conduct is supposed to be burdened or limited nor (b) which party's interests are supposed to be protected or benefited from the sentence. To make matters worse, the sentence is on an island by itself, and no other sentence around it or within the remainder of the contract further explains or expands upon it.

Specifically, the contracts do not define the term "aggregate receivables." (*See generally* ECF No. 29-1.) The ordinary meaning of the term "receivables" is "[a]n amount owed," especially "by a business's customer." *Receivable, Black's Law Dictionary* (12th ed. 2024). "Aggregate" means "[f]ormed by combining into a single whole or total." *Aggregate, Black's Law Dictionary* (12th ed. 2024). Thus, "aggregate receivables" means the total amount owed.

So, what does it mean that the total amount owed to Plaintiff for any/all contracts cannot exceed $6 million at any given time?

Defendant XCoal interprets this sentence to mean that it was not obligated to pay more than $6 million at any given time. (ECF No. 31 at 2.) In theory, then, this would protect the buyer in the contract from a situation in which the seller delivered more coal than expected in a short amount of time. Although Plaintiff argues that "[t]he contracts provide that XCoal shall pay the amount set forth in each invoice on a fixed due date, either net twenty-one (21) or net twenty (20) days from the invoice date," (ECF No. 32 at 3), the very next sentence begins with "however," (*see* ECF No. 29-1). The word "however" is a conjunctive adverb, which joins two clauses and indicates the relationship between them. *See* Bryan A. Garner, *The Redbook: A Manual on Legal Style*, 1.17a (4th ed. 2018); *accord Donelson v. Steele*, 16 F.4th 559, 569 (8th Cir. 2021). Defendant's interpretation imposes a contrasting relationship between the sentences by having the second sentence limit the buyer's obligation set forth in the initial sentence. Thus, Defendant's interpretation—that payment is due within 20-21 days *but* the total amount due cannot exceed $6 million—is reasonable, based on the plain language of the payment paragraph standing alone.

On the other hand, Plaintiff interprets the sentence as a "cap" on "the receivables balance that may be outstanding at any given time." (ECF No. 32 at 2.) Put another way, Defendant XCoal had 20-21 days to pay any individual invoice, but Defendant XCoal cannot let its outstanding balance exceed $6 million at any point in time. Plaintiff's interpretation likewise imposes a contrasting relationship between the sentences by having the second sentence burden the buyer more than the initial sentence. In theory, this would protect the seller in a situation when the buyer has not yet paid an outstanding invoice prior to a new delivery. This

interpretation—that payment is due within 20–21 days *but* the outstanding balance may not exceed $6 million—is also reasonable, based on the plain language of the payment paragraph standing alone.

The Court's analysis is not limited to the payment paragraph, though. *See Hahn*, 837 F. Supp. 3d at 504 (providing that courts are to examine "the context of the entire integrated agreement"). Indeed, when looking at the entirety of the contracts, Defendant XCoal's interpretation of the payment provision is not reasonable. As Plaintiff notes, there is "no contractual mechanism by which the amount exceeding $6 million ever becomes due" under Defendant XCoal's interpretation. (ECF No. 32 at 3; *see also* ECF No. 30 at 11.)

So, if only $6 million was due within 20-21 days, when would the remainder become due? Further, if Plaintiff cannot ever sue for the unpaid portion, based on that same contract provision, how would it ever recover any loss? As Plaintiff reasons, the debt would, in essence, become "permanently unenforceable." (ECF No. 32 at 3; *see also* ECF No. 30 at 11.) That certainly seems unreasonable.

Further, as Plaintiff notes, that result would conflict with the Uniform Commercial Code ("UCC"). (ECF Nos. 30 at 11; 32 at 3.) Specifically, the contracts all provide that they will be "construed and governed in accordance with the laws of the State of New York, including, without limitation, the Uniform Commercial Code . . . ." (*See, e.g.*, ECF No. 29-1 at 16.) Of relevance, the UCC provides that a buyer "must pay at the contract rate for any goods accepted." N.Y. U.C.C. Law § 2-607(1); *see also* N.Y. U.C.C. Law § 2-709(a)(1) (permitting the seller to recover the price of the good when a buyer fails to pay). Thus, Defendant XCoal's interpretation, which

would result in any payment over $6 million being permanently unenforceable, does not adhere to the UCC, which, in turn, conflicts with the plain terms of the contracts.

Therefore, the payment provision of the contracts is not ambiguous. *See Hahn*, 837 F. Supp. 3d at 504. The payment provision's reference to a $6 million limitation is a "cap" on "the receivables balance that may be outstanding at any given time." (ECF No. 32 at 2.) It is not, as Defendant XCoal argues, a limitation on the amount that Plaintiff can collect from Defendant XCoal at any given time.

***2. Summary Judgment is Appropriate***

Having determined that Defendant XCoal's argument—that payment is not due based on the $6 million limitation—fails, it is clear that Plaintiff is entitled to summary judgment on its breach of contract claim. In order to recover for breach of contract under New York law, "a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (applying New York law).

As discussed above, it is undisputed that Defendant XCoal entered into all of the applicable contracts, received the coal from Plaintiff, and has yet to pay the amounts reflected in the invoices for the coal. (*See* ECF No. 31 at 2.) Defendant XCoal likewise acknowledges that it owes Plaintiff $12,097,277.69 on those contracts. (*See id.* at 2–3 (arguing still that the amount "is not owed at this time" based on the payment provision discussed above).) Thus, all four elements of a claim for breach of contract are undisputed.

Defendant XCoal's only remaining argument is that Plaintiff's remedies are limited by the following contract provision:

> **Failure to Remit Payment**. Failure of the Buyer to pay for coal delivered in accordance with the terms hereof shall give Seller the option to (a) suspend further shipments until all previous shipments are paid for or (b) cancel the Confirmation upon written notice to Buyer and (c) seek damages or other relief as provided in this Confirmation. Additionally, Seller may charge interest at the Prime Rate, as published in the Money Rates section of The Wall Street Journal, plus two percent (2%) on any amounts not timely paid by Buyer. If in the judgment of Seller, Buyer's ability to perform hereunder has become impaired, Seller shall have the right, upon notice to Buyer, to suspend further shipments until Seller receives adequate assurance of Buyer's performance in accordance with Section 16. If such assurance is not furnished within ten (10) days after receipt of such notice. Seller shall have the right to cancel or terminate this Confirmation upon written notice to Buyer and seek damages or other relief as provided in this Confirmation.

(*See, e.g.*, ECF No. 29-1 at 14.)

Defendant XCoal uses this provision to argue that Plaintiff never canceled or terminated any of the contracts after it did not receive payment. (ECF No. 31 at 3.) However, as Plaintiff notes, this provision provides suspension and termination as options, as opposed to mandatory relief. (*See* ECF No. 32 at 4.) While Defendant XCoal also asserts that his provision limits Plaintiff's relief to that provided in the contracts,[7] (*see* ECF No. 31 at 3–4), the contracts incorporate the UCC, which permit recovery when the buyer fails to pay, as discussed above, (*see also* ECF No. 32 at 4).

Accordingly, because there are no genuine issues of material fact that Defendant XCoal breached its duty to pay under the contracts, Plaintiff's Motion for Summary Judgment, (ECF No. 29), is **GRANTED** as to Count One.[8]

---

[7] Relatedly, Defendant XCoal argues that Plaintiff cannot recover attorney's fees under Count One. (ECF No. 31 at 4.) However, the Court reserves judgment on Plaintiff's entitlement to attorney's fees and other remedies until trial.

[8] Because Plaintiff's motion is resolved as to Count One, the Court need not consider Plaintiff's argument regarding

## *IV. CONCLUSION*

For these reasons, Plaintiff's Motion for Summary Judgment, (ECF No. 29), is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Count One and **DENIED** as to Count Three.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 13, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

Count Three for unjust enrichment, which was made in the alternative. (*See* ECF Nos. 29, 30.)